IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELISSA DOUGHTY, | : | CIVIL DIVISION |
| | : | |
| Plaintiff, | : | No.:  3:18-cv-116 |
| -v- | : | |
| | : | JURY TRIAL DEMANDED |
| ST. FRANCIS FRIARY; THE | : | |
| PROVINCE OF THE IMMACULATE | : | |
| CONCEPTION OF THE THIRD | : | |
| ORDER REGULAR OF ST. FRANCIS | : | |
| IN THE UNITED STATES OF | : | |
| AMERICA; THE PROVINCE OF THE | : | |
| IMMACULATE CONCEPTION OF | : | |
| THE THIRD ORDER REGULAR OF | : | |
| ST. FRANCIS IN THE UNITED | : | |
| STATES OF AMERICA D/B/A | : | |
| FRANCISCAN FRIARS OF THE | : | |
| THIRD ORDER REGULAR OF ST. | : | |
| FRANCIS; FRANCISCAN VICE | : | |
| PROVINCE OF THE HOLY SAVIOR | : | |
| D/B/A SAINT FRANCIS FRIARY; | : | |
| FRANCISCAN VICE PROVINCE OF | : | |
| THE HOLY SAVIOR; THIRD ORDER | : | |
| REGULAR OF ST. FRANCIS, | : | |
| | : | |
| Defendants. | : | |

## CIVIL COMPLAINT

AND NOW, comes PLAINTIFF, Melissa Doughty ("MS. DOUGHTY" or "PLAINTIFF") by and through her attorneys, Benjamin J. Gobel, Esquire, Michael A. Murphy, Esquire, John D. Perkosky, Esquire, and the law firm Ogg, Murphy & Perkosky, P.C., and files the within Civil Complaint, and in support thereof avers as follows:

## INTRODUCTION

1.       PLAINTIFF brings this employment discrimination action against ST. FRANCIS FRIARY, THE PROVINCE OF THE IMMACULATE CONCEPTION OF THE THIRD ORDER REGULAR OF ST. FRANCIS IN THE UNITED STATES OF AMERICA, THE PROVINCE OF THE IMMACULATE CONCEPTION OF THE THIRD ORDER REGULAR OF ST. FRANCIS IN THE UNITED STATES OF AMERICA D/B/A FRANCISCAN FRIARS OF THE THIRD ORDER REGULAR OF ST. FRANCIS, FRANCISCAN VICE PROVINCE OF THE HOLY SAVIOR D/B/A SAINT FRANCIS FRIARY, FRANCISCAN VICE PROVINCE OF THE HOLY SAVIOR, THIRD ORDER REGULAR OF ST. FRANCIS, (collectively "DEFENDANTS"), for their violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").  In violation of Title VII and the PHRA, PLAINTIFF alleges that DEFENDANTS discriminated against her on the basis of sex, created a hostile work environment, and retaliated against her for opposing and reporting the sexual harassment, discrimination, and/or unlawful conduct.   DEFENDANTS' unlawful conduct ultimately resulted in the termination of PLANTIFF's employment.

## JURISDICTION

2.       The Jurisdiction of this Court is invoked pursuant to Title VII, 42 U.S.C. §§ 2000e, et seq., and under the doctrines of pendant and supplemental jurisdiction as to PLAINTIFF's claims under the PHRA, 43 P.S. § 951, et seq.

3.       This action involves a question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claims alleged herein occurred within the Western District of the State of Pennsylvania. 28 U.S.C. § 1391(b).

5. PLAINTIFF has satisfied all procedural and administrative requirements set forth in Title VII, as well as each statute, law, and/or regulation under which the claims asserted herein are brought, in that:

   a. On November 13, 2017, she timely filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which were dual filed with the Pennsylvania Human Relations Commission, alleging sexual harassment, hostile work environment, sex discrimination, and retaliation;

   b. On February 29, 2018, April 2, 2018, and May 23, 2018, PLAINTIFF received Notices of Right to Sue from the EEOC; and

   c. This action was filed within this Court within ninety (90) days of receipt of the earliest of the aforementioned Notices.

## PARTIES

6. PLAINTIFF, MELISSA DOUGHTY ("MS. DOUGHTY" or "PLAINTIFF"), is an adult individual residing at 306 Male Avenue, Cresson, Pennsylvania 16630.

7. DEFENDANT, ST. FRANCIS FRIARY (hereinafter "FRIARY"), is a Pennsylvania entity organized and existing under the laws of the Commonwealth of Pennsylvania. It maintains a business address of 141 St. Francis Drive, Loretto, Pennsylvania 15940.

8. DEFENDANT, THE PROVINCE OF THE IMMACULATE CONCEPTION OF THE THIRD ORDER REGULAR OF ST. FRANCIS IN THE UNITED STATES OF AMERICA (hereinafter "PROVINCE OF THE IMMACULATE CONCEPTION – 1"), is a Pennsylvania entity organized and existing under the laws of the Commonwealth of Pennsylvania. It maintains a business address of 3908 Chipman Road, Easton, Pennsylvania 18045.

9. DEFENDANT, THE PROVINCE OF THE IMMACULATE CONCEPTION OF THE THIRD ORDER REGULAR OF ST. FRANCIS IN THE UNITED STATES OF AMERICA D/B/A FRANCISCAN FRIARS OF THE THIRD ORDER REGULAR OF ST. FRANCIS (hereinafter "PROVINCE OF THE IMMACULATE CONCEPTION – 2"), is a Pennsylvania entity organized and existing under the laws of the Commonwealth of Pennsylvania. It maintains a business address of 788 Monestary Road, Hollidaysburg, Pennsylvania 16648.

10. DEFENDANT, FRANCISCAN VICE PROVINCE OF THE HOLY SAVIOR D/B/A SAINT FRANCIS FRIARY (hereinafter "PROVINCE OF THE HOLY SAVIOR – 1"), is a Pennsylvania entity organized and existing under the laws of the Commonwealth of Pennsylvania. It maintains a business address of 3908 Chipman Road, Easton, Pennsylvania 18045.

11. DEFENDANT, FRANCISCAN VICE PROVINCE OF THE HOLY SAVIOR (hereinafter "PROVINCE OF THE HOLY SAVIOR – 2"), is a Pennsylvania entity organized and existing under the laws of the Commonwealth of Pennsylvania. It maintains a business address of 232 S. Home Avenue, Pittsburgh, Pennsylvania 15202.

12. DEFENDANT, THIRD ORDER REGULAR OF ST. FRANCIS (hereinafter "THIRD ORDER REGULAR"), is a Pennsylvania entity organized and existing under the laws of the Commonwealth of Pennsylvania. It maintains a business address of 788 Monestary Road, Hollidaysburg, Pennsylvania 16648.

13. At all times relevant hereto, DEFENDANTS were each an employer within the meaning of Title VII, 42 U.S.C. §§ 2000e(b), in that they employed fifteen (15) or more individuals.

**FACTUAL BACKGROUND**

14.     DEFENDANTS own and operate an assisted living facility for elderly friars, in Loretto, Pennsylvania.

15.     MS. DOUGHTY worked for DEFENDANTS for approximately ten (10) years. MS. DOUGHTY began work for DEFENDANTS as a nurse's aide. She remained in the nurse's aide role until her unlawful termination. In this role, MS. DOUGHTY was responsible for providing care and treatment to elderly friars living in the friary.

16.     The nursing staff was predominately female. The majority of the supervisors and superiors were male.

17.     Over the course of her employment with DEFENDANTS, MS. DOUGHTY regularly received positive feedback regarding her work performance and the satisfaction of her job duties and responsibilities. MS. DOUGHTY was explicitly told by her supervisors and superiors that she exceeded expectations and that the individuals for whom she cared were fond of her as a caretaker.

18.     While working for DEFENDANTS, MS. DOUGHTY was repeatedly subjected to unwelcome, frequent, severe, and pervasive harassing and discriminatory conduct based upon her sex (female), including both verbal and physical harassment.

19.     MS. DOUGHTY was repeatedly called a "fucking bitch," a "bitch," as well as "stupid nurse," and "worthless" by a male superior, including Brother Sean Mary Fitzwater, who was in charge of kitchen and dining services. These derogatory and harassing comments occurred on an ongoing basis.

20.     In addition to being verbally harassed, MS. DOUGHTY was subjected to ongoing physical harassment by a male superior, including Brother Sean Mary Fitzwater, who would

deliberately push her in an attempt to physically intimidate and harass her, while also calling her a "bitch."

21. MS. DOUGHTY witnessed other female members of the nursing staff being subjected to this type of verbally and physically harassing conduct.

22. The verbal and physical harassing conduct was frequent, severe, and/or pervasive enough so as to create an intimidating, hostile, and/or offensive working environment.

23. In August 2015, MS. DOUGHTY reported the verbal and physical harassing conduct to a superior, Friar Richard L. Davis. Following this initial complaint and/or report, MS. DOUGHTY continued to complain to her supervisors/managers, including Friar Davis and Friar Jim Morman, about the aforementioned harassing and/or discriminatory conduct. No response was received nor were any changes made.

24. During one meeting with Friar Morman, during which MS. DOUGHTY complained about the aforementioned harassing and/or discriminatory conduct, Friar Morman represented to MS. DOUGHTY that he would speak to Brother Sean Mary Fitzwater regarding the conduct.

25. Friar Morman told MS. DOUGHTY that if it happened again that she should "just walk away and come talk to me." The harassing, discriminatory, and/or unlawful conduct continued, MS. DOUGHTY returned to Friar Morman as she had been directed to do, and she reported that the conduct continued. No response was received nor were changes made. Shortly after voicing these complaints of the aforementioned harassing and/or discriminatory conduct, Ms. Doughty received three (3) disciplinary complaints on the same day.

26. On or about February 10, 2017, MS. DOUGHTY again complained regarding the aforementioned harassing and/or discriminatory conduct during a meeting with Friar Morman.

Instead of taking adequate and appropriate corrective action regarding the aforementioned harassing conduct, Friar Morman told MS. DOUGHTY just to "pray over it," or to "just let him go."

27. Moreover, Friar Morman attempted to justify the aforementioned conduct and why MS. DOUGHTY should continue to "deal with it." Friar Morman attempted to justify this conduct by stating "well, you girls get to go home at night." This was in contrast to the elderly friars, who reside at the friary continuously. No additional response was received nor were any changes made.

28. On or about May 12, 2017, MS. DOUGHTY complained again about the aforementioned harassing conduct to Friar Morman.

29. On or about May 22, 2017, just ten (10) days after MS. DOUGHTY voiced her final complaint, she was terminated. MS. DOUGHTY was not given any explanation as to why she was terminated. Rather, after ten (10) years of employment, she was told that things were "just not working out."

30. DEFENDANTS knew, and/or should have known, that MS. DOUGHTY was being subjected to the aforementioned harassing conduct, and yet they failed to take prompt, adequate, and appropriate corrective action. The harassing and discriminatory conduct continued, unabated, until the time of MS. DOUGHTY's discriminatory termination.

## COUNT I
## TITLE VII
## SEX BASED DISCRIMINATION & HOSTILE WORK ENVIRONMENT

31. PLAINTIFF incorporates by references Paragraphs 1 through 30 as though the same were set forth herein at length.

32. MS. DOUGHTY is a female and is protected from discrimination on the basis of sex, pursuant to Title VII, 42 U.S.C. §§ 2000e, et seq.

33. At all times material hereto, DEFENDANTS acted by and through their authorized agents, servants, workers, and/or employees, acting in the course and scope of their employment with DEFENDANTS, in furtherance of DEFENDANTS' business, subjecting MS. DOUGHTY to sex discrimination in the terms and conditions of employment, as well as a hostile work environment, which constitutes a violation of Title VII.

34. MS. DOUGHTY was subjected to repeated acts of unwelcomed sexual harassment from her superiors, including Brother Sean Mary Fitzwater.

35. Furthermore, despite MS. DOUGHTY's multiple and repeated requests to discuss and address the harassing and discriminatory conduct outlined herein, management failed to adequately and appropriately respond to same.

36. Such conduct was sufficiently severe and pervasive so as to alter the conditions of MS. DOUGHTY's employment.

37. DEFENDANTS' harassing and discriminatory acts were willful, intentional, and purposeful, within the meaning of Title VII, and warrant the imposition of punitive damages.

38. DEFENDANTS' discharge of MS. DOUGHTY was undertaken with reckless indifference to her federally protected rights under Title VII.

39. As a direct and proximate result of DEFENDANTS' illegal, harassing, and discriminatory actions, MS. DOUGHTY has suffered, and continues to suffer, damages, including, but not limited to, the following:

      a. Lost wages and benefits;

      b. Emotional distress, anxiety, humiliation and inconvenience;

      c. Costs and expenses of litigation; and

      d. Attorneys' fees.

WHEREFORE, PLAINTIFF, MELISSA DOUGHTY, demands judgment against DEFENDANTS for their violation of Title VII, 42 U.S.C. § 2000e-5(g), as follows:

a.  Back pay and benefits from May 22, 2017, until the time of trial, with interest;

b.  An injunction precluding DEFENDANTS from discriminating or retaliating against PLAINTIFF in any manner prohibited by Title VII;

c.  Front pay;

d.  Compensatory damages for her emotional distress, anxiety, humiliation and inconvenience;

e.  Punitive damages for DEFENDANTS' reckless disregard of PLAINTIFF's federally protected rights;

f.  Reasonable attorneys' fees and costs and expenses of litigation; and

g.  Such other legal and equitable relief as the Court deems just and proper.

## COUNT II
## TITLE VII
## RETALIATION

40. PLAINTIFF incorporates by references Paragraphs 1 through 39 as though the same were set forth herein at length.

41. At all times material hereto, DEFENDANTS acted by and through their authorized agents, servants, workers, and/or employees, acting in the course and scope of their employment with DEFENDANTS, in furtherance of DEFENDANTS' business, by retaliating against PLAINTIFF for engaging in statutorily protected activity, which constitutes a violation of Title VII.

42. MS. DOUGHTY repeatedly told Brother Sean Mary Fitzwater to leave her alone and to stop harassing her.

43.     MS. DOUGHTY reported Brother Sean Mary Fitzwater's harassment to her superiors on multiple occasions, with her last complaint occurring on May 12, 2017.

44.     Accordingly, MS. DOUGHTY engaged in protected activity under Title VII, by opposing and reporting discrimination, harassment, and/or unlawful conduct.

45.     As a result of voicing complaints and opposing the discrimination, harassment, and/or unlawful conduct, MS. DOUGHTY suffered an adverse employment action in retaliation for engaging in protected activity.

46.     Just ten (10) days after her last complaint, on May 22, 2017, DEFENDANTS retaliated against MS. DOUGHTY when DEFENDANTS told her that things were "just not working out" and by terminating her employment.

47.     MS. DOUGHTY believes and therefore avers that her termination was motivated by DEFENDANTS' desire to retaliate against her for opposing, resisting, reporting, and/or complaining about the harassing and discriminatory conduct outlined herein.

48.     MS. DOUGHTY believes and therefore avers that the reasons for her termination given by DEFENDANTS was pretext for unlawful discrimination.

49.     DEFENDANTS' discriminatory and wrongful acts were willful, intentional, and purposeful within the meaning of Title VII and warrant the imposition of punitive damages.

50.     As a direct and proximate result of DEFENDANTS' illegal, harassing, and discriminatory actions, MS. DOUGHTY has suffered, and continues to suffer, damages, including, but not limited to, the following:

        a.     Lost wages and benefits;

        b.     Emotional distress, anxiety, humiliation and inconvenience;

        c.     Costs and expenses of litigation; and

      d.      Attorneys' fees.

WHEREFORE, PLAINTIFF, MELISSA DOUGHTY, demands judgment against DEFENDANTS, for its violation of Title VII, 42 U.S.C. § 2000e-5(g), as follows:

      a.      Back pay and benefits from May 22, 2017, until the time of trial, with interest;

      b.      An injunction precluding DEFENDANTS from discriminating or retaliating against PLAINTIFF in any manner prohibited by Title VII;

      c.      Front pay;

      d.      Compensatory damages for her emotional distress, anxiety, humiliation and inconvenience;

      e.      Punitive damages for DEFENDANTS' reckless disregard of PLAINTIFF's federally protected rights;

      f.      Reasonable attorneys' fees and costs and expenses of litigation; and

      g.      Such other legal and equitable relieve as the Court deems just and proper.

## COUNT III
## PHRA
## SEX BASED DISCRIMINATION, HOSTILE WORK ENVIRONMENT & RETALIATION

51.    PLAINTIFF incorporates by references Paragraphs 1 through 50 as though the same were set forth herein at length.

52.    Claims raised under the PHRA are interpreted in line with claims raised under Title VII.

53.    Accordingly, MS. DOUGHTY's claims alleged under Title VII are alleged similarly under the PHRA.

WHEREFORE, PLAINTIFF, MELISSA DOUGHTY, demands judgment against DEFENDANTS, for its violation of the PHRA, as follows:

a. Back pay and benefits from May 22, 2017, until the time of trial, with interest;

b. An injunction precluding DEFENDANTS from discriminating or retaliating against PLAINTIFF in any manner prohibited by the PHRA;

c. Front pay;

d. Compensatory damages for her emotional distress, anxiety, humiliation and inconvenience;

e. Punitive damages for DEFENDANTS' reckless disregard of PLAINTIFF's protected rights;

f. A reasonable attorneys fee and costs and expenses of litigation; and

g. Such other legal and equitable relieve as the Court deems just and proper.

Respectfully submitted,

OGG, MURPHY & PERKOSKY, P.C.

/s/ Benjamin J. Gobel, Esquire_____
Benjamin J. Gobel, Esquire
PA ID# 309670

Michael A. Murphy, Esquire
PA ID# 55846
John D. Perkosky, Esquire
PA ID# 83083

OGG, MURPHY & PERKOSKY, PC
Firm ID# 568
245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 471-8500
(412) 471-8503 – Fax

Counsel for Plaintiff